367 So.2d 121 (1979)
Roy J. LaFLEUR et ux., Plaintiffs-Appellees,
v.
CITY OF VILLE PLATTE, Defendant-Appellant.
No. 6676.
Court of Appeal of Louisiana, Third Circuit.
January 12, 1979.
*122 Lewis & Lewis, John M. Shaw, Opelousas, for defendants-appellants.
Fruge & Vidrine, Richard W. Vidrine, Ville Platte, for plaintiffs-appellees.
Before DOMENGEAUX, WATSON, GUIDRY, CUTRER and DOUCET, JJ.
*123 WATSON, Judge.
Defendant herein, the City of Ville Platte, has appealed from a trial court judgment in favor of plaintiffs: Roy J. LaFleur was awarded $5,000 for his wife's medical expenses and $1,312.50 for her loss of wages; Mary Lewis LaFleur was awarded $4,000 for her personal injuries. Consolidated with this suit for trial and appeal is our docket No. 6677, a suit by Dewey and Runnie Thibodeaux against the City for personal injuries sustained by Runnie Thibodeaux in the same accident. Dewey Thibodeaux was awarded $1,325.24 and his wife $1,800 in damages, and the defendant City has also appealed from the judgment in this suit.
FACTS
It is undisputed that plaintiffs, Mary LaFleur and Runnie Thibodeaux, fell from the top of a table at the Ville Platte Community Center while attending a bi-centennial wagon train celebration sponsored by the City of Ville Platte's Bi-Centennial Committee on January 30, 1976. Plaintiffs contend that a leg of the table broke and defendant contends that they merely fell. The trial court found as a fact that one leg of the table collapsed and the evidence establishes with reasonable certainty that a leg of the table broke.
Runnie Thibodeaux testified that the table slipped out from under them shortly after they got on it. She faintly remembered seeing a jagged edge where the leg had been broken off from the frame and completely severed from the table. Mary LaFleur testified that the table fell to the floor very suddenly. William A. Guidry, Chairman of the Ville Platte Bi-Centennial Committee, who was acting as master of ceremonies, testified that a table collapsed, injuring two ladies. He observed that the table was down but did not actually see what happened. The only opposing testimony was that of Rodney Fontenot, an employee of the City of Ville Platte and manager of the city park where the community center is located, who said that none of the legs on the community center's thirty tables were broken the next morning. The testimony is not in direct conflict, since Fontenot was not on the scene until the next day, and the leg on the homemade table could have been nailed back in place before he saw it.
It is established that other people present were sitting and standing on the tables. A photograph at TR. 29 shows people standing on tables against the wall. Ms. Thibodeaux, a kindergarten teacher, testified that the majority of people in the center were sitting or standing on the tables. All testified that master of ceremonies Guidry told everyone present to make themselves comfortable and place themselves so they could see what was going on. Ms. Thibodeaux said that when she arrived at the center there were four chairs on the table, occupied by Helen Dardeau Kyle, her daughter, Nicole, Sherry Vidrine, and Sis Rivers. Ms. Thibodeaux leaned on the table until the conclusion of a number by the Cotton Pickers, involving one of Ms. Kyle's daughters, and got up on the table after these four left at the conclusion of the daughter's performance. Ms. Thibodeaux testified that the table appeared strong and sturdy and similar ones were supporting heavy people in the hall. Ms. LaFleur, a registered nurse, testified that she had no reason to think the table was unsafe and she decided to get up on the table when the chairs on top were vacated by Madams Kyle, Vidrine and Rivers. Ms. LaFleur was described as obese; she weighed approximately 188 pounds. Ms. Thibodeaux was of medium size; she weighed between 150 and 155 pounds.
M. C. Guidry testified that the room was packed because the event was scheduled to be held outside and had been moved inside.
The tables were built by one of Rodney Fontenot's assistants according to his design. They were 8 feet in length, 32 inches high, and 2 feet wide. Each had four legs consisting of two by fours cut on a slant, and the top was of number 1 pine. There was some two by four bracing under the table top, but none at the bottom of the table.
*124 Ms. LaFleur, age 41, was injured on the right side of the chest, and the contusion caused an infection, described as pleurisy or bronchitis and probably a form of pneumonia. She was hospitalized for seven days as a result. Ms. LaFleur also sprained her left wrist and received a lumbodorsal strain with muscle spasms.
Ms. Thibodeaux, age 39, suffered a cervical strain and a contusion of the occipital area of the head.
The amounts awarded are not at issue in the appeal.
Issues:
The decisive issues, at trial and on appeal, are fault on the part of the City and fault on the part of plaintiffs.
Conclusion:
The fact that Ms. LaFleur and Ms. Thibodeaux fell simultaneously indicates that a leg of the table gave way, probably as a result of a defect in the joinder between the leg and the top. This defect resulted in the collapse of the table, which caused plaintiffs' injuries.
The City, as owner and custodian of the table, is at fault and responsible for the damages caused by its collapse, if the table posed an unreasonable risk of harm to plaintiffs and others. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
In considering whether this table presented an unreasonable risk of injury to the public, it is first apparent that a table should not collapse under usual circumstances.[1] The City's duty was to make the premises of the Community Center reasonably safe for those present. Carter v. Salter, La.App., 351 So.2d 312, writ denied, La., 352 So.2d 1045. This duty required an effort to discover any hidden dangers and then either correcting them or warning of their existence. There is no evidence that the tables in the community center were ever inspected for defects. No warning was given of the possibility of a concealed defect in the tables which made sitting or standing on them dangerous. Natal v. Phoenix Assurance Co. of New York, 305 So.2d 438 (La., 1975). Since this table was not a folding type but an eight foot platform, the public's use of it for sitting and standing could reasonably have been foreseen by the City. It is significant that this was a table in a park pavilion and not a household table in a dining room or kitchen. Use of park tables for standing or sitting can hardly be said to be extraordinary or unexpected. The table's sturdy appearance was a deceptive invitation, which gave the City a duty to make it as serviceable as it appeared. The combined weight of Ms. LaFleur and Ms. Thibodeaux was not an excessive load for a large table constructed of two by fours; its collapse can not be attributed to its use as a platform and must have resulted from defective design or construction. The City of Ville Platte was thus at fault in maintaining a defective table, which created an unreasonable risk of harm to the public.
The remaining issue is fault on the part of plaintiffs in using the table as a viewing platform. The trial court concluded that, under the peculiar circumstances here, plaintiffs were not negligent in climbing on top of the table.
Conduct is not negligent or faulty if it is in accord with that of reasonably prudent persons faced with similar conditions and circumstances. Smolinski v. Taulli, 276 So.2d 286 (La., 1973). Here, a large number of those present in the community center had used the tables for a better view of the proceedings. The table in question had been occupied safely, without incident, by a group of four persons prior to plaintiffs, and plaintiffs had no reason to anticipate its collapse. Therefore, we agree with the trial court that plaintiffs' conduct was not unreasonable or below the standard to *125 which they should have conformed for their own protection.
Plaintiffs did not knowingly and voluntarily assume the risk causing the injury. McLaughlin v. Home Indemn. Ins. Co., 361 So.2d 1227 (La.App. 1 Cir. 1978). In the case of a light, insubstantial table, collapse under these circumstances might be anticipated. However, here, Ms. LaFleur and Ms. Thibodeaux assumed only the risk that would ordinarily be encountered when standing or sitting on a heavy table, that of falling. Rosenberger v. Central La. Dist. Livestock Show, Inc., 312 So.2d 300 (La., 1975). Compare Levert v. Travelers Indemnity Company, 140 So.2d 811 (La.App. 3 Cir. 1962). Plaintiffs had no reason to foresee that the table leg would break and that the table would collapse beneath them. Plaintiffs, therefore, were not at fault in using the table as a viewing platform.
For the foregoing reasons, the judgment of the trial court herein is affirmed at the cost of defendant-appellant.
AFFIRMED.
GUIDRY, J., dissents and assigns written reasons.
DOMENGEAUX, J., dissents for the reasons assigned by GUIDRY, J., and alternatively, that the plaintiff assumed the risk.
GUIDRY, Judge, dissenting.
I am unable to agree with my brethren of the majority that the plaintiffs' injuries were occasioned as a result of fault on the part of the City of Ville Platte.
In my view a determination as to whether, under the circumstances of this case, defendant bears any responsibility to plaintiffs for their injuries must be reached by application of the duty-risk inquiry as espoused in Hill v. Lundin &Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). The first inquiry is whether the defendant's conduct complained of was a "cause in fact" of plaintiffs' injuries. There is little doubt that the accident would not have occurred but for the city's maintenance of a table in the community center which would collapse while persons of a combined weight of 350 pounds were seated thereon. It can therefore be said that the defendant's conduct in maintaining such a table in its community center was a cause in fact of the accident. A finding that defendant's conduct was a cause in fact of injury does not, however establish liability. In addition to such finding, in order to establish actionable negligence, the plaintiffs are required to establish that defendant breached a legal duty imposed to protect plaintiffs against the particular risk which caused their injuries. In making this determination the following inquiries are made:
1. What, if any, duty was owed by the city to the plaintiffs?
2. Was there a breach of this duty?
3. Was the risk, and harm caused, within the scope of protection afforded by the duty breached?
I conclude from the record in this case that there was no breach of duty by the city. The city is held to the same degree of care in the performance of its obligations arising from ownership as any other person, i. e., to maintain recreational buildings and appliances therein commensurate with ordinary and reasonable care under the circumstances and to discover any unreasonably dangerous condition on the premises and either correct the condition or warn of its existence. Godfrey v. Baton Rouge Recreation & Parks Com'n, 213 So.2d 109 (La.App. 1st Cir. 1968). See also Shelton v. Aetna Casualty & Surety Co., 334 So.2d 406 (La. 1976). The city's duty in this case was to maintain the tables therein safe for use as tables, i. e., dining, meetings, etc. There is no evidence in the record indicating that the tables in the community center were constructed or maintained by the city for use other than as ordinary tables, i. e., to receive food, to place books and papers thereon at meetings, etc. This being so, the city's duty was to maintain the tables safe while being used as intended. There is absolutely no evidence in the record to support a finding that the table in question was not entirely and perfectly safe while being used for its intended purpose. The *126 only evidence in the record is that it was not safe for use as a grandstand to hold chairs and people, however, the city did not construct nor maintain it for such purpose. I would thus find that the table in question did not present any unreasonably dangerous condition, when used for its intended purpose; the city had no duty to warn plaintiffs that the table was not suited for use as a grandstand for such was as easily observable to an individual in the exercise of reasonable care as it was to the city; and, therefore, there was no breach of duty on the part of the city.
In Manget v. Seidenberg, 230 So.2d 299 (La.App.1970) our brethren of the Fourth Circuit reached a similar result when presented a claim for personal injury by a patron at a Mardi Gras ball who was injured when he fell against and through a decorative balustrade. In denying recovery the court stated:

"It is basic to the law of torts ` * * * that, in the absence of some duty which has been neglected or violated, there can be no actionable negligence; and hence, in order that a person may have a cause of action on account of an injury to person or property resulting from negligence, it is necessary that the act or omission complained of should have involved some breach of duty owed to him, or to the person whom he represents, by the person of whose negligence he complains.' Payton v. St. John, La.App., 188 So.2d 647 and authorities cited therein.. . ."

". . . Since the balustrade was designed to serve no purpose other than that of decoration, and all parties understood this to be the case, we cannot say that Seidenberg was negligent in not building it with sufficient strength to support the weight of plaintiff's body. A person employed to decorate a place of amusement cannot be held to owe those persons using the facilities the duty of making each decorative item that he erects so strong and sturdy as to be capable of supporting the weight of a grown man. To do so would certainly place an unreasonable burden on those engaged in the art of decoration, and would ignore the common sense of those enjoying the decoration."
I find the situation presented by these consolidated cases like that presented in Manget, supra.
Having determined that the defendant, city, breached no duty owed to the plaintiffs, I would find it unnecessary to consider the issues as to whether or not plaintiffs', under the circumstances, were contributorily negligent or assumed the risk. However, in this regard, I note that my esteemed brethren of the majority find that plaintiffs' conduct was not unreasonable or below the standard to which they should have conformed for their own protection because others present at the celebration were also standing or sitting on the tables which had been placed along the walls. In my view it is error to judge reasonableness or unreasonableness of conduct on the basis of the conduct of others present at the same function. This is so because the conduct of others present, as in this case, may fall below the standard of conduct to which a plaintiff must conform for his own protection, i. e., that of a reasonable man under like circumstances.
For the foregoing reasons I respectfully dissent.
NOTES
[1] In the case of a collapsing chair, there is not only fault but an inference of negligence. Dillman v. Nobles, 351 So.2d 210 (La.App. 4 Cir. 1977); Pear v. Labiche's, Inc., 301 So.2d 336 (La., 1975), and Glover v. Poydras, 314 So.2d 417 (La.App. 4 Cir. 1975) writ denied 318 So.2d 49 (La.)