472 So.2d 326 (1985)
Hilton FREEMAN, Plaintiff-Appellant,
v.
M.L. THOMAS, Defendant-Appellee.
No. 84-547.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1985.
*327 Gary Ortego, Ville Platte, for plaintiff-appellant.
Fruge & Vidrine, Jack C. Fruge, Ville Platte, for defendant-appellee.
Before GUIDRY, KNOLL and KING, JJ.
KING, Judge.
The sole issue presented by these four consolidated appeals is whether or not the owner of a rent house which caught fire, allegedly due to faulty wiring, is liable to others for damages caused by the fire.
Hilton Freeman appeals from a trial court judgment which denied his suit for damages for personal injuries which he sustained as a result of the house fire.
This case was consolidated with the cases of Arvie v. Thomas, 472 So.2d 330 (La. App. 3rd Cir.1985); Thomas v. Thomas, 472 So.2d 330 (La.App. 3rd Cir.1985); and Freeman v. Thomas, 472 So.2d 331 (La. App. 3rd Cir.1985). These cases remain consolidated on appeal and, since the law and relevant facts are common to all cases, our opinion here is equally applicable. However, we render a separate judgment in each consolidated case.
In each case plaintiffs are seeking damages because of a fire which began in a leased premises. Each case involves a determination of the cause of a fire which occurred on or about December 13, 1982, at a house (hereinafter the Thomas house), owned by the defendant, M.L. Thomas, (hereinafter Thomas), and leased by Clinton Freeman and Gladys Scott. Freeman and Scott instituted their suit for property damage for their personal effects which were destroyed by the fire in the Thomas house.
Lougenia Arvie owned the house next door to the Thomas house and instituted a suit, on her own behalf and on behalf of her minor children, for property damages incurred by them when the fire, which started in the Thomas house, spread to the Arvie house and caused damage.
Hilton Freeman and his wife were visiting with Gladys Scott and Clinton Freeman in the Thomas house on the night of the fire. Hilton Freeman instituted a suit for his personal injuries that were sustained during the fire.
Lee Thomas instituted a suit for property damage to his vehicle, which was parked in the driveway of the Thomas house, and damaged in the fire.
The trial court granted judgment in favor of the defendant in all cases the plaintiffs all have timely appealed. We affirm.

FACTS
The trial court found that all plaintiffs had failed to prove by a preponderance of the evidence that the fire in the Thomas house was caused by defective wiring. In making his finding, the trial judge stated in his reasons for judgment that:
"This Court having heard all of the testimony in this case views this case as a very simple one of fact.
"All parties to this litigation agree with the law that in order for the plaintiffs to recover damages from the defendant, they must prove that the house that was rented from the defendant was defectivein this case, whether it had defective electrical wiring or not. This Court, considering all of the evidence adduced, including the credibility of all witnesses, simply is of the opinion that the plaintiffs failed to prove by a preponderance of the evidence that the defendant's house had defective wiring. On the contrary, it appears from the record that the defendant, M.L. Thomas, corrected any possible defective wiring in the rented house after some complaints of electrical shortages in the property. It must be noted that Reverend M.L. Thomas owns other houses, and testified that this house was in normal condition, including the wiring, as were his other houses and houses of a similar nature in the community owned by others. This wiring was performed by a competent electrician, and his work was inspected by the electrical inspectors of the City of Ville Platte, who found that the wiring was acceptable for the type of home in question. *328 It is regrettable that the plaintiffs lost their property in this fire, but the cause thereof cannot be pinpointed to any defect of the house in question, or by negligence of the defendant. It may have been caused by other reasons, including negligence on the part of the tenants, since there was some evidence they had a defective electrical heater.
"Therefore, this Court is of the opinion that the fire that caused plaintiffs' damages was of unknown or unproven origins."
Under LSA-C.C. Art. 2695[1] the lessor is liable to the lessee for any losses sustained as a result of "vice and defects" in the premises, provided they did not arise as a result of the lessee's fault. Brunies v. Police Jury of Jefferson Parish, 237 La. 227, 110 So.2d 732 (1959); Smith v. Hartford Acc. & Indem. Co., 399 So.2d 1193 (La.App. 3rd Cir.1981), writ denied 406 So.2d 604 (La.1981).
LSA-C.C. Art. 2322[2] holds the owner of a building strictly liable for damages caused by either the ruin of the building or the owner's neglect to repair it. Neither ignorance of the defect nor its latency is a defense. Moreover, there is no need to show negligence to recover under this article. Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1979); Barnes v. Housing Authority of New Orleans, 423 So.2d 750 (La.App. 4th Cir.1982); Smith v. Hartford Acc. & Indem. Co., supra.
The burden of proof which the plaintiffs must meet in an action arising under either Art. 2695 or Art. 2322 is to show by a preponderance of the evidence that a defect in the building caused the injury complained of. Barnes v. Housing Authority of New Orleans, supra. In Boudreaux v. American Insurance Co., 262 La. 721, 264 So.2d 621 (1972), the Supreme Court held that evidence, whether direct or circumstantial, need not negate all other possible causes of injury by saying, "... It suffices if the circumstantial proof excludes other reasonable hypothesis only with a fair amount of certainty, so that it be more probable than not that the harm was caused by the tortious conduct of the defendant." See also, Latham v. Aetna Casualty and Surety Co., 377 So.2d 350 (La.1979).
The issue presented by the evidence in each of these consolidated cases is whether the evidence, taken as a whole, establishes that the fire, more probably than not, was caused by defects in the Thomas house or by the fault of defendant, Thomas.
Succintly stated, all of plaintiffs' claims against Thomas are based on the contention that the fire in the Thomas house was electrical in origin, more specifically that it resulted because of faulty electrical wiring. The plaintiffs all claim that Thomas, as owner of the house is liable for the damages caused by the faulty electrical wiring and also because he neglected to repair such faulty electrical wiring.
Hilton Freeman and his wife were visiting Gladys Scott and Clinton Freeman on December 13, 1982 at the Thomas house. They all testified that they went out that evening and got a couple of beers and returned to the Thomas house around 10:00 o'clock P.M. They proceeded to cook some chicken on an electric hot plate and after eating danced and visited until approximately 1:00 o'clock A.M. Shortly thereafter, they all went to bed only to be awakened by the fire which started at approximately 2:00 o'clock A.M. They all escaped from the burning Thomas house, but Hilton Freeman suffered some minor *329 burns. The fire spread to Lougenia Arvie's home next door and by the time it was extinguished the Thomas house and her home were virtually destroyed. The vehicle owned by Lee Thomas, which was parked in the driveway of the Thomas house at the time of the fire, was damaged.
The Thomas house consisted of three bedrooms. Gladys Scott and Clinton Freeman were sleeping with their child in the front bedroom at the time of the fire. Gladys Scott testified that she was awakened by smoke coming from the ceiling in the front bedroom and that eventually the entire Thomas house caught fire. All four occupants of the Thomas house testified that the electric hot plate had been turned off before they went to bed. They also testified that there was an electric heater in the front room where Gladys Scott and Clinton Freeman were sleeping but that it was not being used the night of the fire. The only other appliance located in the house was a refrigerator which was located in the kitchen.
Both Gladys Scott and Clinton Freeman testified that they had called the fire department at least twice before the December 13th fire. The first time they called was because of some smoking from the chimney into the Thomas house and the second time concerned some sparks and smoke which occurred when some of the light switches in the Thomas house were turned on.
Mr. Reniel Smith, the Chief of Ville Platte Fire Department, testified that the fire department was called to the Thomas house on three occasions. The first occasion involved the smoking chimney which Smith testified was due to an old and clogged chimney. He stated that he advised Scott and Freeman to stop using the fireplace. He testified his second visit to the house was on March 27, 1982. Smith testified that there was an overheating problem with a wire in the attic. For this reason Smith cut the electricity off in the house by removing the meter and putting a plug in the meter base. Smith further testified that the only way to get a meter reconnected was to first fix the electrical problem and then have it inspected and approved by the electrical inspector for the City of Ville Platte. The third time Smith was called to the Thomas house was at the time of the December 13th fire. Smith testified that he had first assumed that the cause of the fire was electrical but at trial stated that he actually had no idea or opinion as to what caused the fire.
Bob Manual, an electrician and the electrical inspector for the City of Ville Platte, testified that after the March 27, 1982 incident he inspected the wiring in the house and found it to be satisfactory. Mr. Manuel testified that he checked the wires in the two front rooms of the house and also the new recepticles that were placed in the house by the electrician who had done the rewiring and found the work and new equipment to all be sufficient. Therefore, he informed the electric company that the meter could be reconnected and electrical service furnished to the house.
Mr. Smith, Mr. Manuel and Mr. Ira Foxworth, an expert in the electrical field, all testified that if there were no recepticles in use at the time the fire started, as the plaintiffs claimed, then it would have been highly unlikely that the fire could have started because of defective wiring. They all testified that if there were any electrical defects in the wiring system it would be necessary that an electrical appliance in the home be operating for a fire to occur as the result of defective wiring. Foxworth testified that he doubted the refrigerator could have started the fire but that if two bare wires were stuck into a recepticle it definitely could cause a fire.
DeCynthia Gallow, Clarence Gallow and Janella Johns all testified that they had visited Scott and Freeman and that the electric heater in the front bedroom did not have a plug on the wires. They stated that the heater was plugged into the recepticle by placing the two open wires in the cord into the electric recepticle.
Plaintiffs denied that the cord to the electric heater did not have a plug and denied that the electric heater was plugged *330 in on the night of the fire. They contend that the electrical wiring of the Thomas house was never properly repaired and that the defective electrical wiring caused the fire.
The trial court clearly held that the evidence presented by the plaintiffs was not sufficient to establish their right to recover. The court found that the plaintiffs had failed to prove by a preponderance of the evidence that more probably than not the electrical wiring in the Thomas house was defective. The trial judge made a factual determination that the fire that caused plaintiffs' damages was of unknown or unproven origin. This factual determination should not be overturned on appeal absent a showing of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
Having reviewed the entire record in this case we conclude that the trial judge was correct in his conclusions of fact and that he is not manifestly in error. The cause of the fire in the Thomas house cannot be pinpointed to any defect in the Thomas house or to any negligence of the defendant. The evidence adduced at trial simply is not sufficient to establish that it was more probable than not that the electrical wiring in the Thomas house was the cause of the fire. Accordingly, the judgment of the trial court is affirmed. All costs of this appeal are to be paid by the plaintiffs-appellants.
Affirmed.
NOTES
[1] LSA-C.C. Art. 2695 provides:

"The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same."
[2] LSA-C.C. Art. 2322 provides:

"The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in the original construction."